IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| DANA JOHNSON and ) | |
| NATIONAL CARRIERS, INC. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| ) | |
| v. ) | No. 2:07-CV-277 |
| ) | |
| VOLVO TRUCK CORPORATION, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This civil action is before the court for consideration of "Defendants' Motion for Partial Summary Judgement" [doc. 9]. Plaintiff, National Carriers, Inc., as subrogee of plaintiff Dana Johnson, ("National"), has filed a response in opposition [doc. 18]. The court has determined that oral argument is unnecessary, and the motion is ripe for the court's consideration. Defendants ("Volvo")[1] have moved for summary judgment on plaintiffs' claims based on breach of warranty. For the reasons stated herein, the motion will be granted.

---

[1] There are three Volvo entities named as defendants. For simplicity, the court will refer to them throughout as "Volvo."

I.

*Background*

On May 8, 2006, a truck manufactured by Volvo and owned by National caught fire. The driver, Dana Johnson, was traveling on the interstate through Tennessee when the truck caught fire resulting in injury to her and the destruction of the truck. National contends that its expert proof shows that defective wiring near the truck's sleeper berth area was the cause of the fire. In its complaint, National seeks property damage, towing and storage charges, and workers compensation payments to Johnson. One of the bases for recovery asserted by National in its complaint is breach of express and implied warranties.

On August 26, 2004, Mike Rinehart, acting on behalf of National, executed a warranty registration for the subject vehicle. At the top of the registration in all capital letters is printed the following:

> NO OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE GIVEN BEYOND THOSE SET FORTH THEREIN.

Immediately under this language in all capital letters is printed the following:

> LIMITATION OF REMEDIES
>
> IN NO EVENT SHALL VOLVO TRUCKS NORTH AMERICA, INC. OR ITS DEALERS BE LIABLE FOR SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF INCOME, DOWNTIME EXPENSES AND ANY OTHER COMMERCIAL LOSSES,

> UNLESS EXPRESSLY PROVIDED OTHERWISE IN THIS WARRANTY. THE BUYER'S REMEDY IS LIMITED TO REPAIR OR REPLACEMENT OF THE PART OR COMPONENT WHICH IS DETERMINED DEFECTIVE IN NORMAL USE. THE STANDARD TRUCK AND VOLVO ENGINE WARRANTY CERTIFICATES CONTAIN THE SOLE AND EXCLUSIVE WARRANTIES FOR VOLVO TRUCKS AND VOLVO ENGINES.

Above Rinehart's signature in all capital letters is the following language:

> ON THE DATE OF THE SALES ORDER, I HAVE READ THE WARRANTY CERTIFICATE AND UNDERSTAND AND ACCEPT THE TERMS AND ACKNOWLEDGE RECEIPT OF THIS AGREEMENT THROUGH MY SIGNATURE BELOW.

At the bottom of the front page of the Standard Truck Warranty Certificate for the subject vehicle contains the following language printed in all capital letters:

> THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS OR CONDITIONS, STATUTORY OR OTHERWISE, EXPRESSED OR IMPLIED INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

The reverse side of the certificate contains the limitations and exclusions. At the very top of the page in capital letters is printed: "THESE LIMITATIONS AND EXCLUSIONS ARE IMPORTANT AND MUST BE READ AND UNDERSTOOD." The exclusions state in part, "Volvo Trucks North America, Inc.'s obligation is limited to, at its option, repair or

3

replacement of parts which are acknowledged by it to be defective." Directly below this language and above the list of exclusions is printed the following statement all in capital letters:

> NO PAYMENT OR OTHER COMPENSATION WILL BE MADE FOR CONSEQUENTIAL, INDIRECT OR INCIDENTAL EXPENSES OR DAMAGES OF ANY KIND.

II.

*Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party may discharge its burden by demonstrating that the non-moving party has failed to establish an essential element of that party's case for which he or she bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party need not support its motion with affidavits or other materials negating the opponent's claim. *Id.* at 323. Although the moving party has the initial burden, that burden may be discharged by a "showing" to the district court that there is an absence of evidence in support of the non-moving party's case. *Id.* at 325 (emphasis in original).

4

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

III.

*Analysis*

Volvo argues that the implied warranties of merchantability and fitness for a particular purpose have been properly excluded by the warranty documents executed by National. Under Tennessee law,

> to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or

5

> modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

Tenn. Code Ann. § 47-2-316(2); *see also Ford Motor Co. v. Moulton*, 511 S.W.2d 690, 692 (Tenn. 1974).

Volvo's warranty documents properly exclude all implied warranties. The language is bold and conspicuous and the word "merchantability" is used. The documents were read and signed by National's representative, who by signing them acknowledged that he understood and accepted the terms. The court finds that there can be no basis for a breach of warranty claim based on any implied warranties as any such warranties have been properly waived or excluded by Volvo.

The express warranty given by Volvo is limited to "repair or replacement of parts which are acknowledged by it to be defective" and Volvo has also disclaimed all consequential damages. Therefore, Volvo argues that National cannot recover the damages it seeks, apart from the claimed injury to Johnson authorized under Tenn. Code Ann. § 50-6-112. National contends that Volvo's express warranty failed of its essential purpose and therefore National is entitled to take advantage of the remedies available under the Uniform Commercial Code ("UCC"). National also contends that Volvo's limitation on consequential damages is unconscionable.

6

In support of its position that Volvo's warranty failed of its essential purpose, National relies heavily on *Rudd Construction Equipment Co. v. Clark Equipment Co.*, 735 F.2d 974 (6th Cir. 1984). In *Rudd*, the plaintiff was a heavy equipment dealer and distributor that had purchased a tractor shovel from the defendant manufacturer. The tractor shovel caught fire while being demonstrated and burned to the point where it was reduced to junk with only salvage value. The evidence indicated that a defective hydraulic hose ruptured causing fluid to ignite upon contact with heat from the turbochargers. There was no proof that either party knew the hose was defective until the fire occurred, although the hose was defective at the time it was delivered.

The district court predicted Kentucky law and determined that the "repair and replace" language in the warranty failed of its essential purpose. The district court also determined that the plaintiff buyer could recover the net purchase price of the entire tractor shovel under the breach of warranty theory. The Sixth Circuit agreed with the district court, but in doing so made the following observation:

> Although recovery under a breach of warranty theory is not precluded by the repair or replace provision, the question still remains whether the award of the purchase price of the tractor violates the separate provision in the contract stating that "in no event shall Clark be liable for consequential or special damages." That is, given the determination that the repair or replace warranty in the contract failed of its essential purpose, does the provision eliminating Clark's liability "for consequential or special damages" survive to preclude the award of damages above

7

> the cost of the ruptured hose? Or are such damages not precluded, either because they are not "consequential or special," or because this provision, insofar as it did exclude such damages, also failed of its essential purpose?

*Id.* at 982. The Sixth Circuit then observed that White and Summers would consider most of the fire damage that occurred to the tractor shovel as consequential. The Court then quoted the following from White and Summers's treatise:

> In *Russo v. Hilltop Lincoln-Mercury, Inc.*, [479 S.W.2d 211 (Mo. App. 1972)], defective wiring caused a fire which destroyed the buyer's new automobile. The court awarded the buyer the full purchase price of the automobile without identifying that portion of the price which represented recovery for consequential damages. Only the difference between the automobile's warranted and actual value at the time of acceptance could be recovered as general damages under 2-714(2). The defective wiring system reduced the actual value of the automobile at the time of acceptance below the purchase price, but the defect did not render the auto worthless as of the acceptance date. A large part of the fire damage was therefore consequential. Had the parties excluded consequentials by contract, the court would have had to identify the value differential component of the buyer's total loss. (FN: Whenever a defective component part causes an accident that damages the entire product, a large part of the total damages may be consequential.).

*Id.* (citing J. White & R. Summers, *Handbook of the Law under the Uniform Commercial Code* § 10-4, at 386-87 (2d ed. 1980)). The Sixth Circuit then concluded:

8

> The trial judge did not analyze his award of the net replacement value in terms of whether it was for "direct" or "consequential" damage. Nonetheless, his analysis of Kentucky case law makes it clear that regardless of how the fire damage is characterized, to the extent that express limitations in the contract precluded the owner in these circumstances from recovering at least the purchase price of the truck, such limitations were ineffective under Ky. Rev. Stat. § 355.2-719(2).

*Rudd*, 735 F.2d at 982.

Based on this factually similar authority, National contends that the repair and replace warranty in this case failed of its essential purpose and it is entitled to the value of the truck as well as other consequential damages. However, *Rudd* is based on Kentucky law, not Tennessee law, which does not support National's contention.

Even if the court assumes that the repair and replace warranty failed of its essential purpose, that fact alone does not entitle National to take advantage of the remedies available under the UCC as applied in Tennessee. Under Tennessee law, an exclusion of consequential damages is not automatically waived when a warranty fails of its essential purpose. *Aquascene, Inc., v. Noritsu Am. Corp.*, 831 F. Supp. 602 (M.D. Tenn. 1993); *Shepherd v. Weather Shield Mfg., Inc.*, No. W1999-00508-COA-R3-CV, 2000 WL 34411064 (Tenn. Ct. App. Aug. 21, 2000). In *Shepherd*, the Tennessee Court of Appeals stated:

> Even if there were a showing that Weather Shield's contractual replacement remedy failed of its essential purpose, that would not automatically waive the consequential damages exclusion. In order to be waived, the exclusion of consequential

9

> damages must be shown to be unconscionable in and of itself.

*Shepherd*, 2000 WL 34411064, at *6.

Tenn. Code Ann. § 4-2-719(3) provides:

Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

The question of whether a contract provision, in this case the limitation of consequential damages, is unconscionable is a question of law for the court to determine. *Taylor v. Butler*, 142 S.W.3d 277, 284-85 (Tenn. 2004); *Trinity Indus., Inc. v. McKinnon Bridge Co.,* 77 S.W.3d 159, 170 (Tenn. Ct. App. 2001).

> Unconscionability may arise from a lack of a meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably harsh (substantive unconscionability). In Tennessee we have tended to lump the two together and speak of unconscionability resulting when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other.

*McKinnon*, 77 S.W.3d at 170-71 (citations omitted). Additionally, "[w]here the parties possess equal bargaining power the courts are unlikely to find that their negotiations resulted in an unconscionable bargain, and terms that are common in the industry are generally not

10

> damages must be shown to be unconscionable in and of itself.

*Shepherd*, 2000 WL 34411064, at *6.

Tenn. Code Ann. § 4-2-719(3) provides:

Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

The question of whether a contract provision, in this case the limitation of consequential damages, is unconscionable is a question of law for the court to determine. *Taylor v. Butler*, 142 S.W.3d 277, 284-85 (Tenn. 2004); *Trinity Indus., Inc. v. McKinnon Bridge Co.,* 77 S.W.3d 159, 170 (Tenn. Ct. App. 2001).

> Unconscionability may arise from a lack of a meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably harsh (substantive unconscionability). In Tennessee we have tended to lump the two together and speak of unconscionability resulting when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other.

*McKinnon*, 77 S.W.3d at 170-71 (citations omitted). Additionally, "[w]here the parties possess equal bargaining power the courts are unlikely to find that their negotiations resulted in an unconscionable bargain, and terms that are common in the industry are generally not

unconscionable." *Id*. at 171 (citations omitted).

Nothing in the record demonstrates that the limitation of consequential damages is unconscionable for any reason. National is an interstate motor carrier that transports goods throughout the continental United States. Volvo is a multi-national corporation that manufactures semi-tractors as well as other vehicles. The contracting parties are two very large and sophisticated businesses, and there is certainly no indication that bargaining between them was unequal. Further, there is no showing that the limitation on consequential damages in Volvo's standard truck warranty is uncommon in the industry. *Cf. Id*. ("Both parties were large, successful, and sophisticated businesses possessing equal bargaining power; and there is no claim that an exclusion of consequential damages is uncommon in the steel furnishing business.").

National argues that the limitation on consequential damages is unconscionable because a latent defect is involved. The only case cited by National in support of this argument that involves Tennessee law is *Rubber Technology, Inc. v. Amplan, Inc*., No. 91-5756, 1992 WL 76934 (6th Cir. April 13, 1992). In *Rubber Technology* the district court had determined that the limitation of remedies entered into by the parties failed of its essential purpose. According to the Sixth Circuit, "[t]he court specifically found that Rubber Tech was the victim of unfair surprise in purchasing an untested machine that was represented as having capabilities that were actually unproven and evidently unobtainable." Under those circumstances, the district court found the exclusion of consequential damages

11

unconscionable. The Sixth Circuit affirmed the district court.

> TENN. CODE ANN. § 47-2-719 provides that an agreement may limit a seller's recovery unless circumstances cause such limited remedy to fail of its essential purpose. The statute further provides that consequential damages may be limited or excluded unless such limitation or exclusion is unconscionable. We conclude that the district court correctly applied the governing statute, found the limitation unconscionable under the facts of this case, and awarded monetary damages to Rubber Tech.

*Id.* at *3.

However, *Rubber Technology* was decided before *Aquascene* and *Shepherd*, and it is unclear how much the district court and even the Sixth Circuit viewed the unconscionable finding as a natural sequence of the repair and replacement remedy failing of its essential purpose under the facts of the case. More importantly, *Rubber Technology* was decided before *Contour Medical Technology v. Flexcon Co., Inc.*, No. 01A01-9707-CH-00315, 1998 WL 242609 (Tenn. Ct. App. May 6, 1998). In *Contour Medical*, the plaintiff contended that the limitation on consequential damages was unconscionable "because the defect was latent and could not have been discovered until the harm occurred." *Id.* at *6. The Tennessee Court of Appeals cited to cases that held in favor of the plaintiff's position and also those that did not support that position. The Court then stated:

> We would hesitate to adopt either rule in this case; we think that unconscionability depends more on the circumstances surrounding the transaction than on the latency of the defect.

12

> Indeed, a latent defect that cannot be discovered (even by the seller), may be a good reason for the seller to bargain for a limitation on the buyer's remedies.

*Id*. Thus, it would appear that Tennessee law would not support a finding that unconscionability can be based on the latency of a defect.

Accordingly, even if the repair and replacement warranty failed of its essential purpose, Volvo limited its consequential damages, which would include the damages caused by the fire. *See Rudd,* 735 F.2d at 982 (citing J. White & R. Summers, *Handbook of the Law under the Uniform Commercial Code* § 10-4, at 386-87 (2d ed. 1980)); *see also Dave's Cabinets, Inc. v. Komo Mach., Inc*., No. 05-854, 2006 WL 1877075, at *6 (D. Minn. July 6, 2006) ("The fire damage to the real property and to the other business machinery and equipment is included in the category of consequential damages because it [is] damage to other property allegedly caused by a product defect.") (citing Minnesota's equivalent to Tenn. Code Ann. § 47-2-715 which defines consequential damages under the UCC). National has not shown that the limitation is unconscionable under Tennessee law. National is obviously a large, sophisticated business operation whose representative knowingly signed the warranty documents. Those documents clearly and conspicuously set out the limitations on the remedies and identify what Volvo agreed to warrant. These business entities were certainly capable of considering and balancing the pros and cons of limiting or assuming specific losses under this warranty agreement. Therefore, because National has not demonstrated that the limitation of consequential damages is unconscionable under

13

Tennessee law, it cannot obtain those damages based on any warranty theory.[2]

Accordingly, for the reasons stated herein, Volvo's motion for partial summary judgment will granted, and National's claims based on breach of warranty will be dismissed. An order consistent with this opinion will be entered.

ENTER:

        s/ Leon Jordan
United States District Judge

---

[2] Volvo's motion states that it seeks judgment on National's "claims for economic damages apart from the claimed injury to Dana Johnson as authorized under T.C.A.§ 50-6-112."

14