IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

DANA JOHNSON and,                    )
NATIONAL CARRIERS, INC.              )
                                     )
            Plaintiffs,              )
                                     )
                                     )
v.                                   )        No. 2:07-CV-277
                                     )
VOLVO TRUCK CORPORATION,             )
*et al.*,                            )
                                     )
            Defendants.              )

## MEMORANDUM OPINION

This civil action is before the court for consideration of "Volvo's Motion for

Summary Judgment" [1] [doc. 115]. Plaintiff, National Carriers, Inc. ("National"), as subrogee

of Dana Johnson ("Johnson"), has filed a response in opposition [doc. 125], and Volvo has

submitted a reply brief [doc. 126]. The motion is now ripe for the court's determination.

Volvo has moved for summary judgment on the only remaining claim, which

is based on the Tennessee Products Liability Act. [2] For the reasons that follow, the motion

will be granted, and this case will be dismissed.

---

[1] The three Volvo entities named as defendants will be referred to herein collectively as
"Volvo."

[2] On November 19, 2008, the court dismissed plaintiffs' claims based on breach of warranty
[docs. 34, 35].

## I.

### *Background*

On May 8, 2006, a Volvo semi tractor owned by National and driven by Johnson suddenly caught fire, resulting in a total loss of the semi tractor and injury to Johnson. Johnson was operating the semi tractor on Interstate 81 in Tennessee. Plaintiffs allege that the fire resulted from "a malfunctioning and/or design defect existing at the time of manufacturer (sic) and at the time the product left the control of the Defendants." They further allege that "[t]he Volvo semi tractor caught fire and burned due to an electrical malfunction which existed at the time the Volvo tractor left the control of the Defendants and at the time of purchase in 2005; therefore, the Defendants are liable under the Tennessee Products Liability Act codified at Tennessee Code Annotated § 29-28-101 *et. seq.*"

Johnson did not file suit against the defendants within the applicable statute of limitations, so National brought suit as subrogee to recoup property damages for the loss of the semi tractor and for the amounts it has paid in worker's compensation benefits, which include medical expenses and lost wages.

II.

*Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party may discharge its burden by demonstrating that the non-moving party has failed to establish an essential element of that party's case for which he or she bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party need not support its motion with affidavits or other materials negating the opponent's claim. *Id.* at 323. Although the moving party has the initial burden, that burden may be discharged by a "showing" to the district court that there is an absence of evidence in support of the non-moving party's case. *Id.* at 325 (emphasis in original).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

3

In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

## III.

### Analysis

In order to recover under the Tennessee Products Liability Act ("TPLA"), a plaintiff must prove that a product was "in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." Tenn. Code Ann. § 29-28-105. Under the TPLA, a "defective" condition is defined as "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption." Tenn. Code Ann. § 29-28-102(2). The TPLA defines "unreasonably dangerous" as a product "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition." Tenn. Code Ann. § 29-28-102(8).

4

"Under Tennessee law, regardless of the theory asserted, a plaintiff must 'trace the injury to some specific error in construction or design of the [product] . . .' to establish a products liability cause of action." *Horton v. Werner Co.*, No. 95-6167, 1997 WL 735322, at *2 (6th Cir. Nov. 18, 1997) (quoting *Harwell v. Am. Med. Sys., Inc.*, 803 F. Supp. 1287, 1298 (M.D. Tenn. 1992)); *see also Brown v. Crown Equip. Corp.*, 181 S.W.3d. 268, 282 (Tenn. 2005) ("The plaintiff must trace his or her injury to the defect."). "Thus, under Tennessee law, a products liability plaintiff must always prove that an unreasonably dangerous or defective condition was the proximate cause of the injury." *Horton*, 1997 WL 735322, at *2 (citing *Cansler v. Grove Mfg. Co.*, 826 F.2d 1507, 1511 (6th Cir. 1987)); *see also Pride v. BIC Corp.*, 218 F.3d 566, 580 (6th Cir. 2000) ("In order to recover under the [TPLA], the plaintiff has the burden of showing that the alleged 'defect in the product [was the] cause in fact of the injury.'") (quoting *Wyatt v. Winnebago Indus., Inc.*, 566 S.W.2d 276, 281 (Tenn. Ct. App. 1977)); *Whaley v. Rheem Mfg. Co.*, 900 S.W.2d 296, 300 (Tenn. Ct. App. 1995) ("It almost goes without saying that the identified product defect must be the proximate cause of the plaintiff's injury.").

The simple fact that injury and/or damage have occurred is not proof of a defective product. *Langford v. Gatlinburg Real Estate & Rental, Inc.*, 499 F. Supp. 2d 1042, 1051 (M.D. Tenn. 2007) (citing *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 967 (M.D. Tenn. 2002)). "[T]he failure or malfunction of the device, without more, will not make the defendant liable. A plaintiff must show that there was something wrong with the product and

5

trace the plaintiff's injury to the specific defect." *King v. Danek Med., Inc.*, 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000)(internal citations omitted). Pursuant to Tennessee law, "expert testimony is required to establish liability in cases alleging manufacturing and design defects." *Pride*, 218 F.3d at 580-81 (citing *Fulton v. Pfizer Hosp. Prod. Group, Inc.*, 872 S.W.2d 908, 912 (Tenn. Ct. App. 1993)).

In support of its motion for summary judgment, Volvo argues that the expert testimony offered by plaintiffs fails to demonstrate the required elements of an action under the TPLA. Volvo contends that both of plaintiffs' experts have failed to establish that the semi tractor was defective or unreasonably dangerous when it left the control of Volvo and the experts have not identified a specific defective or unreasonably dangerous condition that was the proximate cause of the injuries and damages sustained by plaintiffs. In support of their claims, plaintiffs have presented two experts, James Geiger ("Geiger") and Bernard Kromenacker ("Kromenacker").

In deposition testimony, Geiger stated that his expertise is electrical engineering and he admitted that he was not an expert in the cause or origin of the fire. He offered the opinion that the fire was electrical and started in the HVAC unit, located under the bunk in the semi tractor. Geiger testified regarding his opinions as follows:

> Q. So with that information, if I ask you to assume I'm accurate that that (sic) fuse - - a fuse protects the HVAC circuit, you cannot point to a particular component, connector, or part of the installation that you opine is defective or unreasonably dangerous that caused this fire. Correct?

6

A.     No, sir.  I do not have that component.  But the probability is the greatest that it was a connector.

Q.     Let me go back, because I want you to answer this question, and I don't think you have.

       You cannot identify a specific defect or unreasonably dangerous condition that caused this fire, can you?

A.     No, sir.  Because the defects have destroyed themselves.

Q.     Okay.  And you don't know whether that defect or unreasonably dangerous condition that you think may have started this existed when this truck left the control of - - custody and control of Volvo, do you?

A.     No, sir.

Q.     Okay.  You don't know whether whatever caused the fire resulted from improper maintenance, do you?

A.     Well, the - - Mr. Bernstein again told me that there had been no record of any maintenance performed on this particular HVAC unit.

Q.     Now you know from your experience as an engineer that the lack of maintenance can result in dangerous conditions developing, don't you?

A.     That's correct.

Q.     And so he's saying that no maintenance was ever conducted.  Was it ever checked to see if it was developing problems, as far as you know?

A.     I don't know about the checking part, but he said there was no maintenance performed on the unit - -

Q.     So let's go - -

A.     - - the HVAC unit in particular.

7

Q.  So to bring it full circle, without knowing the history of problems or maintenance or lack of maintenance of this HVAC unit, you don't know what could have caused the condition to develop that you opine caused this fire.

A.  No.  The probability is that it was, number one, a connector; number two, a component within the unit itself failed and generated the heat.

Q.  Okay.  And you don't know which of those.

A.  No, sir.

Q.  Okay.  And you don't know whether that condition existed when it left Volvo.

A.  No, sir.

Plaintiffs' other expert, Kromenacker, identified two components and the connectors to those components as the possible causes of the fire.  One component he identified as a Living Environment Control Module ("LECM") and the other component as an air driver or fan designated "RO5" on a schematic produced by Volvo.  Volvo states in its brief that the air driver or fan is actually labeled as an "air dryer."

When questioned about whether the air driver or fan was the source of the problem, Kromenacker testified:

Q.  Same question with regard to a fan motor.  You couldn't really say with any reasonable degree of certainty that the fan motor was the probable cause without testing an exemplar under similar conditions as existed in the installed truck?

A.  Yeah, we're talking about the components for this vehicle, that is correct.

8

With regard to the other component, the LECM, Kromenacker testified as follows:

>A.     There's a control module that is connected directly to the battery, and that could also be a possibility.

>Q.     Can you say with a reasonable degree of engineering certainty that it was a probability?

>A.     Yes, sir, I believe it was a - - it is a probability that that could occur.

>Q.     I'm not asking if it's a probability it could occur. Is it probable, more likely than not, that the source of this was the air driver or the other component you just identified or either one, or you can't say?

>A.     I can't say at this time.

Kromenacker also considered the connectors to the LECM and the air driver or fan as the possible cause of the fire. In that regard, he testified:

>Q.     . . . Tell me the mechanics of developments that led up to an ignition source, as you opine occurred?

>A.     If a conductor is attached to - - the conductor coming from the battery to the HVAC system, the connector's (sic) themselves are manufactured connectors and generally don't fail. If you get a failure, you then get it mid-stream, or you are going to get it at the unit itself.
>        Dodge has had problems with the power distribution center, where the connection between the battery and the power distribution center failed.
>        In this particular case, I believe the unit itself failed. I can't say specifically which one came first.

>Q.     I want to talk about an improper connection first.
>        You said either an improper connection or the unit failed?

A.    Yes, sir.

. . .

Q.    Do you know what - - first of all, you don't know that it was improper connector, it may have been?

A.    That is correct.

Q.    Second of all, if it was an improper connector, you don't know whether that problem existed when it left the custody and control of Volvo or developed at a later time, do you?

A.    No, sir, I do not.

Kromenacker's opinions are summarized in his testimony as follows:

Q.    Okay.  So the two - - here's what I'm hearing you say. I'm going to try to sum this up . . .
      The two components that you've identified as a potential culprit is this fan, we've been calling it a fan?

A.    Yes, sir.

Q.    I don't know what it is, but we're calling it a fan, and you've got a red arrow pointing to it, . . . and this control unit, correct?

A.    Yes, sir.

Q.    One of those, in your judgment, either had an improper connector or they failed.  That's what I hear you telling me.

A.    Yes, sir.

Q.    And they are right there at the HVAC unit.  That's the part of the HVAC unit that you think failed, one of those two parts?

A.    Yes, sir.

Q.    And the two possible failures with regard to each one of

10

those two parts is an improper connector or a failure of the component itself, correct?

A.    Yes, sir.

Q.    You don't have any other cause and origins, given your investigation, than those two components or the connectors to those two components?

A.    Yes, sir, that's correct.

Plaintiffs argue in their response that this motion is a veiled attempt by defendants to bring another *Daubert* motion concerning plaintiffs' experts, when the *Daubert* issue regarding these experts has already been decided [doc. 65]. The court disagrees with this assessment of Volvo's motion. Volvo has presented a properly documented and briefed motion for summary judgment that argues the elements of a products liability action under Tennessee law, the proof plaintiffs have to support their claims based on their experts' testimony, and where, in Volvo's opinion, this proof fails. The motion before the court is not a *Daubert* motion.

Plaintiffs also argue in their response that they survive summary judgment because they have offered sufficient proof to raise questions of fact for a jury. For example, plaintiffs contend that the lack of maintenance on the semi tractor along with the testimony of their experts creates a question of fact that the HVAC unit was unreasonably dangerous when it left Volvo. However, plaintiffs' experts cannot, as required by Tennessee law, identify a specific defect or unreasonably dangerous condition that existed in the HVAC unit when it left Volvo that was the cause in fact of the fire, which resulted in the injuries and

11

damages at issue. Neither Geiger nor Kromenacker can identify a specific component or connector that they contend was the culprit. They have only narrowed the cause down to several possibilities.

In *Langford v. Gatlinburg Real Estate & Rental*, *Inc*., 499 F. Supp. 2d 1042 (E.D. Tenn. 2007), the plaintiff brought in part a products liability action against the manufacturer of a hot tub claiming that it malfunctioned and caused a fire which destroyed a vacation home. The state of the expert proof was similar to that in this case. This court found as follows:

> In the present case, the plaintiff conceded at the summary judgment hearing that the only proof that she has to establish that an alleged defect in the hot tub caused the fire is the testimony of the plaintiff's expert, Samuel Sero. Sero opined that "that the fire originated in the James Deluxe spa and was caused by an unwanted hearing (sic) of the combustible materials of the spa due to a malfunction of some component or components of the spa." Sero, however, cannot identify in what manner the hot tub was defectively designed or manufactured. Nor can Sero specifically identify the particular component or components of the hot tub that malfunctioned and therefore were allegedly defective. Further, Sero cannot identify whether these components were defective when they left Hawkeye's control. Finally, Sero admitted that he could not reach a conclusion regarding the specific cause of the fire. Nevertheless, Sero testified that he believed the origin of the fire was the hot tub, stating: "I know that the origin is the spa. Exactly what component is in the spa did it, [I] can't tell you. . . ."
>
> Sero's testimony fails to establish that a particular defect in the hot tub caused the fire in this case. To opine that the fire originated in the hot tub is simply not sufficient; it is not enough to prove that some type of injury or damage occurred. Rather,

12

> the plaintiff must establish, through the use of expert testimony, that some specific defect in the product was the proximate cause of the fire. Viewing the evidence in the light most favorable to the plaintiff, the Court finds that the plaintiff has failed to do so. The plaintiff's failure to establish that a specific defect in the hot tub rendered it defective or unreasonably dangerous and caused the fire requires the dismissal of her product liability claims against Hawkeye.

*Id.* at 1052 (internal citations omitted).

The same circumstance exists in this case. Plaintiffs' experts Geiger and Kromenacker contend that the HVAC unit is where the fire originated. However, neither one can say which component, if it was a component, or which connector, if it was a connector, was the proximate cause of the fire. Plaintiffs have the burden of demonstrating through expert testimony that a specific defect or unreasonably dangerous condition was the proximate cause of the fire that resulted in the injuries and damages in this case. After viewing the evidence in the light most favorable to the plaintiffs, the court finds that the plaintiffs have failed to carry that burden. Neither of plaintiffs' experts can specifically identify a defect or unreasonably dangerous condition that was the cause in fact of the fire that resulted in the injuries and damages. All they can do is offer possible alternatives. In addition, neither expert can confirm that a specific defect or unreasonably dangerous condition existed in the semi tractor's HVAC unit at the time it left the control of Volvo. This showing is not sufficient under Tennessee law, and summary judgment is thus appropriate.

13

IV.

*Conclusion*

Accordingly, for the reasons set forth herein, Volvo's motion for summary judgment will be granted, and this case will be dismissed. An order consistent with this opinion will be entered.

ENTER:

_____s/ Leon Jordan_____
United States District Judge